170 So.2d 758 (1964)
Octave GARDERE
v.
Richard E. BROWN, Jr., Administrator of the Division of Employment Security, Department of Labor, State of Louisiana.
No. 6276.
Court of Appeal of Louisiana, First Circuit.
December 21, 1964.
Rehearing Denied February 3, 1965.
*760 Breazeale, Sachse & Wilson, by Frank P. Simoneaux, Baton Rouge, for appellant.
DeBlieux & Guidry, by Carl A. Guidry, Marion Weimer, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.[*]
LANDRY, Judge.
This is an appeal by Crawford Corporation, employer of plaintiff-claimant, Octave Gardere, from the decision of the trial court reversing a ruling of the Louisiana Board of Review and declaring said claimant entitled to unemployment compensation benefits.
Claimant, a handyman assigned to the home of a Mr. Crawford whose precise connection with the aforesaid employer is not disclosed in the record, was discharged January 13, 1964, by Crawford, claimant's immediate superior, for alleged insubordinance, insolence and impertinence in responding to Crawford's inquiry regarding plaintiff's failure to perform certain duties in accordance with Crawford's instructions communicated to claimant through a maid in Crawford's home. Pursuant to the procedure set forth in the Louisiana Employment Security Law, LSA-R.S. 23:1471 et seq., claimant was held disqualified from receipt of unemployment compensation benefits by administrative process which adverse determination claimant appealed to the Appeals Referee, who, after hearing, determined on evidence adduced that claimant's disqualification was without cause and entered a ruling reversing the administrative disqualification and declaring claimant entitled to benefits under the applicable statute. The employer then appealed the decision of the Appeals Referee to the Board of Review in accordance with LSA-R.S. 23:1630 which, after hearing conducted subsequent to due notice to all concerned, concluded claimant had in fact been discharged for cause and reinstated the initial administrative finding of disqualification. Claimant then invoked judicial review of the decision of the Board of Review as provided for by LSA-R.S. 23:1634 pursuant to which appeal was taken to the Court below. The lower court reversed the finding of the Board of Review and adjudged claimant entitled to benefits under the act. From this latter decision the present appeal was taken to this Court.
The facts of this case as reflected by the testimony taken at the hearing held before the Board of Review, are comparatively simple and undisputed.
Claimant had been in the employ of Crawford Corporation for a period in excess of eight years during which extended period his services in the capacity of handyman and yardman were apparently satisfactory inasmuch as the record reveals no prior instance of alleged inpertinence, insolence, disobedience or failure, neglect or refusal to obey an order of his said employer.
According to the testimony of claimant, on the day preceding his discharge he had been instructed by a maid in the Crawford home to attach license plates to certain automobiles assigned or belonging to the Crawford household. The next day, on being asked by the maid why the licenses had not been installed, claimant informed her he could not perform this chore without first discussing the matter with either Mr. or Mrs. Crawford as he did not know which license was to be affixed to each particular vehicle. Thereupon the maid went upstairs, conveyed some message to the employer who then came down in a rage cursing claimant *761 and demanding to know why claimant had not obeyed the instructions of the maid and stating in effect that the maid had told him claimant refused to install the licenses unless ordered to do so by Mr. or Mrs. Crawford. Claimant further stated he attempted to explain to his employer that he had not refused to install the plates unless personally ordered to do so by Mr. or Mrs. Crawford but rather that he had told the maid he could not do so without instructions as to which vehicle the particular licenses belonged. Mr. Crawford declined to listen to claimant's offer to explain, ordered claimant to "shut up" and thereupon began cursing claimant. At this juncture plaintiff asked his employer not to curse him but to "fire him" whereupon Crawford informed plaintiff that plaintiff was fired and ordered plaintiff out of his home.
Neither Mr. Crawford, Mrs. Crawford nor the maid testified at the hearing held before the Board of Review. However, Mr. Ralph H. Sims, Merchandising Director, Crawford Corporation, testified on behalf of the employer giving purely hearsay testimony regarding the incident of claimant's discharge as related to the witness by Mr. Crawford.
Sims' brief and unambiguous testimony setting forth Crawford's version of the circumstances surrounding claimant's discharge, in its entirety, is as follows:

"REFEREE: What is your name and position with the firm, please.
"SIMS: Ralph H. Sims, Merchandising Director, Crawford Corp.
"REFEREE: What do you know of this matter?
"SIMS: I know exactly what was related to me by Mr. Crawford,
 who was Octave's direct supervisor. Mr. Crawford told
 me that he came down one morning and said to Octave, did
 you put the tags on the car, and Octave said, no, and a few
 more words. And Mr. Crawford confesses to using a bit of
 profanity at that point. Not cursing Octave, but just angry
 that he hadn't done what he had been told to do. And he
 says that Octave said you can't cuss me, or something to that
 effect, and a few more words followed, probably angry on
 both sides, and again, Mr. Crawford probably said something
 like damn it why don't you do what you are told to do, and
 Octave, again, according to Mr. Crawford, said you can't
 cuss me, you can fire me, but you can't cuss me. And Mr.
 Crawford said okay, then, there is the door. Get out and
 don't come back. Now that's about it as it was told to me by
 Mr. Crawford.
"REFEREE: To your knowledge, Mr. Sims, did this man work quite a
 while for Mr. Crawford? This was the firstI mean, I am
 asking you if you had any other knowledgethis is the
 first time the claimant ever had any difficulty with Mr.
 Crawford?
"SIMS: I know that Octave has worked for Mr. Crawford for some
 time. I don't know whether there has been any difficulty
 before or not. I haven't heard of any."

In his brief before this Court able counsel for the employer maintains the trial court erred in reversing the decision of the Board of Review inasmuch as the jurisprudence is well established to the effect the findings of the Board, if supported by sufficient evidence *762 and in the absence of fraud are conclusive on the Courts. In this regard esteemed counsel contends the record contains ample evidence to support the Board's findings and the trial court erred in holding otherwise. Likewise it is contended the trial court erred in failing to recognize and apply the settled legal principle that where, in cases such as this, the evidence adduced before the Board is susceptible of more than one construction, the interpretation adopted by the Board must prevail. In this latter connection it is argued the law is settled to the effect judicial review does not permit weighing of the evidence, deciding the inferences to be drawn therefrom, re-evaluating the evidence as found by the Board of Review or substituting the Court's judgment for that of the Board. Counsel further contends claimant's testimony alone is sufficient to support the Board's findings.
On the other hand, claimant maintains the burden is on the employer to establish the employee's disqualification and although the courts must accept the Board's findings of fact it is nevertheless the obligation and function of the court to determine whether, under the facts found by the Board of Review, claimant is or is not entitled to receipt of benefits provided for by the applicable statute.
As argued by astute counsel for appellant employer herein, in cases of judicial review of the determinations of the Board of Review as provided for in the applicable statute, the factual determinations of said Board are binding and conclusive upon the courts if supported by sufficient evidence and fraud is not present. LSA-R.S. 23:1635; McGinnis v. Moreau, La.App., 149 So.2d 188; Barber v. Lake Charles Pipe & Supply Co., La.App., 148 So.2d 326; Fruchtzweig v. Southern Specialty Sale Company, La.App., 161 So.2d 374.
We are likewise in agreement that judicial review of the findings of the Board of Review does not permit weighing the evidence nor does it authorize the courts to decide what inferences are to be drawn from the evidence or re-evaluate the evidence or substitute the Court's judgment on the facts for that of the Board. Barber v. Lake Charles Pipe & Supply Co., La. App., 148 So.2d 326.
We are not in agreement, however, with the contention of counsel for appellant to the effect that the trial court erred if it found as a fact claimant was insubordinate, the discharge was nevertheless unjustified as such conclusion is obviously contrary to the finding of the Board of Review which is binding upon the judiciary. To hold as learned counsel for appellant urges in this regard is tantamount to ruling the decisions of the Board of Review are binding upon the Courts as to both factual and legal issues. Such, however, is not and has never been the jurisprudence of this state. On the contrary, we cite with approval the following observations appearing in Turner v. Brown, La.App., 134 So.2d 384:
"Under the statute, the courts must accept the factual findings of the administrative agency if supported by sufficient evidence. But the legislature has also provided for judicial review of questions of law affecting the administrative determinations, which review includes the judicial determination of whether, under the facts found by the agency, the claimant is or is not as a matter of law entitled to receive the benefits provided by the unemployment statute. As summarized in Broussard v. Administrator, Division of Employment Sec., La.App. 1 Cir., 121 So.2d 268, 270-271: `"* * * the courts may not invalidate the findings of fact by the Board of Review where supported by evidence entitled to judicial acceptance. It is equally clear, however, that where a court must ascertain the effect of the act, judicial responsibility embraces the question of whether such findings are indicative of a disqualification under the statute," * * * "While the courts cannot question facts as found by the Board if supported by sufficient evidence, they should always *763 be able to determine the meaning of the law to be applied to those facts and to review the application of the law." * * *'"
It is clear, therefore, that while the courts must accept the Board's findings absent fraud and present sufficient evidence in support thereof, the legal effect of such findings are questions of law clearly within the appellate jurisdiction of the Courts. Whether the facts as found by the Board constitute cause for disqualification of a claimant is a matter of law into which the Courts may make legitimate inquiry on judicial review.
Granted an employee for hire (as distinguished from one engaged under a contract of hire for a stated period) may be discharged by an employer at any time for slight, trivial or no cause whatsoever, it does not necessarily follow that every discharge for cause, no matter how minor or insignificant serves to disqualify the released employee from the benefits provided by the statute in question. The term "misconduct connected with his employment" as used in LSA-R.S. 23:1601(2) has been interpreted by the Supreme Court of this state to mean deliberate, willful or wanton disobedience or disregard of the employer's rules and regulations or negligence to such degree as to constitute manifest culpability, evil design or intentional and substantial disregard of the employer's interest. Thus in Horns v. Brown, 243 La. 936, 148 So.2d 607, we find the following language which we quote with approval inasmuch as we find it clearly applicable to the issue before us, to-wit:
"This is the first time that the aforestated question has come before this court, although the matter of a proper construction of the phrase `misconduct connected with the last employment' has been the subject of inquiry in several cases in the Louisiana Courts of Appeal. See American Sugar Refining Company [American Sugar Refining Co. v. Taylor, La.App., 115 So.2d 898] supra, and In Re: U. S. Gypsum Company, La.App., 121 So.2d 362 (Orleansnow FourthCircuit); Burge v. Administrator, Division of Employment Security of the Department of Labor, La.App., 83 So.2d 532, Sewell v. Sharp, La.App., 102 So.2d 259, Jackson v. Administrator of Division of Employment Security of Department of Labor, La.App., 128 So.2d 915 [86 A.L.R.2d 1009] certiorari denied (Second Circuit); and Batiste v. Brown, La.App., 134 So.2d 381, Johnson v. Brown, La.App., 134 So.2d 388 and Vandike v. Brown, La.App., 139 So.2d 803 (Third Circuit). In those cases the courts uniformly enunciated the same interpretation as has been adopted by the tribunals of other jurisdictions having similar statutes. A concise statement of that interpretation is set forth in 48 American Jurisprudence, verbo Social Security, Unemployment Insurance, etc., Section 38, page 541, thusly: `Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. * * *'
"Obviously, the quoted interpretation is proper and correct, for in ordinary and usual parlance the word `misconduct' connotes an intentional or deliberate wrongful act or a wanton negligence or neglectful failure in performance that would be tantamount to the mentioned act. This being true, it follows *764 that the mere `permitting' by an employee of certain acts in violation of company policy or rules which arise from, or as the result of, circumstances beyond the employee's control do not constitute misconduct connected with the employment within the meaning of LRS 23:1601(2).
"Therefore, in determining the instant controversy we must examine the evidence adduced and therefrom ascertain whether there was any act (or failure to perform) on this plaintiff's part which might be held to be a deliberate, intentional, or wanton violation of the company's policy relative to garnishment. And in making the determination we cannot apply the usual rules of evidence, particularly those regarding the burden of proof, in view of and because of the manner in which the facts in cases such as this are developed."
It is urged by both the Administrator and claimant that the Board of Review erred in admitting the hearsay evidence of Sims because such testimony is clearly prohibited on authority of King v. Brown, La.App., 115 So.2d 405; Huddleston v. Brown, La.App., 124 So.2d 225; Lee v. Brown, La.App., 148 So.2d 321. We have carefully considered the cited decisions and do not believe they stand for the proposition stated, namely, that hearsay evidence is not admissible in matters of this character. Our understanding of the cited authorities is that they merely hold a decision of the Board may not be predicated solely upon such evidence in view of the established jurisprudence to the effect the Board's findings must be supported by "competent evidence." We believe the cited authorities also hold that while hearsay evidence may be received in view of LSA-R.S. 23:1631, which states that the usual rules of evidence do not govern the Board's hearing, nevertheless hearsay evidence will not be considered in determining whether the Board's findings are supported by the evidence.
It follows we must disregard Sims' testimony in determining whether or not the record contains sufficient competent evidence to support the Board's factual determination claimant was discharged for insubordination and is therefore ineligible for benefits herein.
Under the established jurisprudence it was clearly and unmistakably the duty, burden and obligation of the employer to establish claimant's discharge for misconduct connected with his employment. Gatlin v. Brown, La.App., 154 So.2d 224; Fruchtzweig v. Southern Specialty Sales Company, La.App., 149 So.2d 623.
Therefore, insofar as the present matter is concerned we must determine whether the Board's determinations are supported by sufficient evidence solely upon the testimony of claimant. We unhesitatingly conclude the testimony of claimant fails to disclose his discharge for misconduct within the meaning of the term as contained in LSA-R.S. 23:1601(2). The testimony in question falls woefully short of establishing a deliberate intent or purpose on the part of such employee to wilfully and wantonly disregard or obey a reasonable and proper order or instruction of his employer. On the contrary, we discern a situation wherein an employee (for what appears to us to be reasonable cause) refrained from carrying out instructions because the employer neglected to furnish him with the information necessary to properly complete the assigned task. Claimant's failure to carry out his instructions until receipt of information regarding the identity of the vehicles to which the respective plates were to be attached, we believe to be a reasonable position. His mere refusal or failure to perform the assigned duty cannot, under such circumstances, constitute a wilful, deliberate or intentional failure to obey an order.
*765 Adverting now to the conversation between employer and employee which led to claimant's discharge we do not consider the incident one in which the employee may be said to have been insubordinate, insolent or impertinent to such degree as to warrant his discharge for misconduct. From the record it is clear that because of the information communicated to him by his maid, Mr. Crawford confronted plaintiff in an aroused, angry and belligerent mood so much so that he almost immediately began cursing plaintiff. It further appears that when appellant attempted to explain his position he was denied the opportunity by his employer who ordered him to "shut up" and resumed his use of profanity. Under such circumstances we do not consider claimant's admonition to his employer to fire claimant rather than curse him as constituting insolence or insubordination. Had the employer listened to claimant's attempted explanation the incident might have terminated on a more pleasant basis and claimant may have been continued in the employer's service.
We believe no employer is justified in cursing or heaping profanity or abusive language upon an employee for disobeying an instruction and especially so where the employee may have had good reason for failing to obey orders. To deny an employee opportunity for explanation of his conduct under such instances is but to add insult to injury and can only be expected to arouse the ire of a reasonably prudent individual. We further believe it elementary justice and equity that an employee possesses the inherent right to resent verbal abuse on the part of his employer as well as the right to react thereto as a reasonably prudent man without incurring the loss of benefits under the act in the event of his discharge for taking such umbrage.
In oral argument before this court able counsel for the employer has suggested our remand of this matter for the taking of the testimony of Mr. Crawford on authority of Lee v. Brown, La.App., 148 So.2d 321. Assuming arguendo, Mr. Crawford testified identically or substantially the same as Sims the record would nevertheless be barren of sufficient evidence supporting the view claimant was guilty of misconduct. We have hereinabove quoted Sims' testimony in toto which, according to said witness was "exactly what was related to me by Mr. Crawford" and found that, taking such evidence as true, it would not justify claimant's discharge for misconduct. Moreover, the employer was duly notified of the hearing and chose not to be present or offer his testimony in person.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.
NOTES
[*] Due to the death of HERGET, J., prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by ELLIS, LOTTINGER, LANDRY and REID, J.