419 So.2d 1219 (1982)
Gloriadine GLADSTONE
v.
AMERICAN AUTOMOBILE ASSOCIATION, INC. and The State of Louisiana, Office of Employment Security.
No. 81-C-1923.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*1220 Frank J. Varela, New Orleans, for applicant-defendant.
Roger J. Larue, Jr., Metairie, James A. McGraw, Willie D. Maynor, Baton Rouge, for respondent-plaintiff.
LEMMON, Justice.
The issue in this case is whether defendant is entitled to a summary judgment dismissing plaintiff's petition to annul a judgment allegedly obtained by fraud and ill practices.

I.
Plaintiff was discharged from her employment with defendant, American Automobile Association (AAA), for alleged violations of a company directive. When she applied for unemployment compensation benefits, the Office of Employment Security ruled that, on the information available at that time, there was no evidence of misconduct which would bar plaintiff from receiving benefits.
The employer appealed. At a hearing before the appeals referee, AAA's personnel manager testified: Plaintiff had been employed by AAA for more than ten years as a sales representative. She sold memberships in AAA on a commission basis for $36.00, which included the annual fee of $26.50 and a one-time enrollment fee of $9.50. During the Christmas season, enrolled members could purchase new memberships for Christmas gifts for only $26.50, with the enrollment fee being waived. During plaintiff's employment, some sales representatives sold new memberships for $26.50 under the guise of gift memberships. In 1978, AAA attempted to curb the practice by issuing a directive which established rigid procedures governing the sale of gift memberships. In November, 1979, sales personnel were reminded of the prohibition against the disguised sale of gift memberships at a sales meeting, from which plaintiff was excused because of her child's hospitalization. In December, 1979, plaintiff was terminated because she sold ordinary *1221 memberships disguised as gift memberships.[1]
The personnel manager further testified that the company, while aware that sales personnel had engaged in similar fraudulent sales in the past, made a concerted effort in 1978 and 1979 to eliminate the practice. He stated that he did not know of any other employees who had been fired for this violation, but pointed out that plaintiff had become careless about documentation and had been placed on probation shortly before her termination because of an altercation with a cashier over the necessity for documentation.
Plaintiff also testified at the hearing, admitting that she had sold ordinary memberships and turned them in as gift orders, but asserted that she and others had done so for years with tacit approval by company supervisors. She further asserted that she had the names of other representatives and that "I'm gonna take this to court if I have to". She insisted that the sales manager was looking for a reason to fire her, because she was a black female and because she had personality clashes with the sales manager and a cashier.
The appeals referee found that plaintiff was discharged for violating the company policy regarding Christmas gift memberships and concluded that the violation constituted misconduct connected with employment under R.S. 23:1601(2). The Board of Review affirmed. The district court, after reviewing the administrative record on judicial review, also affirmed, concluding that the discharge "was justifiable because of [plaintiff's] intentional fraudulent misconduct in selling Christmas gift memberships in December of 1979."
Plaintiff did not appeal from the June 30, 1980 judgment, but instead, on August 13, 1980, filed a motion to annul the judgment. The motion merely alleged that the judgment was obtained by "fraud and ill practices, inasmuch as the facts produced by the defendant, American Automobile Association [were] not a true representation of the reason for the dismissal of the defendant, and further, that the American Automobile Association otherwise misrepresented the facts to the Appeal Referee." The motion requested a remand to the appeals referee for further evidence.
After the trial court sustained the employer's exception of improper use of summary proceedings and converted the matter to an ordinary proceeding, plaintiff filed a supplemental petition, which contained the following allegations:
"a) Petitioner was terminated because of a violation of a directive in force in 1978 and 1979, with regard to the sale of Christmas memberships;
"b) That the directive was issued in 1978, but in fact, the directive was openly violated with the knowledge and tacit approval of supervisory personnel, including Mr. Jack Hyman, District Manager of American Automobile Association.
"c) That in 1979 the directive was again brought up, at which time Mr. Alfredo Cortez was the District Manager;
"d) That notwithstanding the reissuance of the directive, it was again openly violated by many of the employees, none of whom were terminated with the exception of Gloriadine B. Gladstone;
"e) That in 1979, the supervisory personnel were aware of the method that the Christmas memberships were sold, that in fact, the memberships were sold in violation of the directive and no action was taken against any other sales personnel;
"f) That as a matter of fact, the District Manager at the time of the termination of Mrs. Gladstone, Mr. Alfredo Cortez, was attempting to find reason to terminate Mrs. Gladstone, and so advised other personnel;

*1222 "g) That for a period of years, the method in which petitioner was selling Christmas memberships was, in fact, an established and accepted method, and she was not advised that she was doing anything improper until after she sold the memberships and after American Automobile Association accepted the memberships;
"h) That these facts were intentionally not brought to the attention of the Appeals Referee;
"i) Further, petitioner avers that it was not until after the Appeals Referee had rendered a decision that she discovered the evidence necessary to bring this petition."[2]
In response, the employer filed an exception of no cause of action and a motion for summary judgment. The trial court overruled the exception and denied the motion. The court of appeal affirmed, holding that the petition stated a cause of action by alleging that the employer withheld information from the appeals referee which might have altered his conclusions or those of the Board of Review. 402 So.2d 254. We granted certiorari. 405 So.2d 532.

II.
C.C.P. Art. 2004 provides:
"A final judgment obtained by fraud or ill practices may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
The action for nullity based on fraud or ill practices is not intended as a substitute for an appeal or as a second chance to prove a claim which was previously denied for failure of proof. The purpose of the action is to prevent injustice which cannot be corrected through new trials and appeals. See Project of Louisiana Code of Practice of 1825 at 97 (Official Reprint, 1938).
In Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), this court reviewed the historical development of C.C.P. Art. 2004 and noted that the jurisprudence under Art. 607 of the Code of Practice (the source for present C.C.P. Art. 2004) had established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. See also Succession of Gilmore, 157 La. 130, 102 So. 94 (1924); Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953).
Evidence in support of the facts alleged in the petition for nullity was presented by the plaintiff in the hearing before the appeals referee.[3] Moreover, other evidence on the same factual issues was available to plaintiff at the time and was not presented because plaintiff chose not to do so. The transcript of the hearing clearly shows that the appeals referee considered plaintiff's contentions that she was singled out for disciplinary measures and that the violations of the directive were simply a pretext for her discharge.[4] After hearing plaintiff's evidence of discrimination, the appeals referee concluded that the discharge was actually based on plaintiff's violations, which constituted misconduct and disqualified plaintiff for benefits.
*1223 Plaintiff had every opportunity to support her defenses in the hearing before the appeals referee. The circumstances under which the referee's decision was rendered do not show any deprivation of legal rights. Plaintiff simply did not exercise sufficient diligence in marshaling and presenting evidence of her version of the facts leading up to her termination. If plaintiff at the trial of the nullity action were to present evidence of the facts alleged in her petition for nullity, the trial would simply be a relitigation of the same factual issues after she had exercised diligence that was not exerted in the original proceeding.
Discovery of evidence which could have been presented at the original trial usually cannot serve as the basis for an action for nullity. Furthermore, even if a new witness is not discovered until after the judgment becomes final, despite the exercise of due diligence, that fact is not grounds for nullity of judgment unless fraud was involved or unless the enforcement of the judgment would be inequitable and unconscionable.[5] Otherwise, the finality of judgments would be seriously impaired.
As to the allegation that AAA intentionally withheld facts from the appeals referee, the mere failure to disclose information at a hearing does not necessarily constitute fraud or ill practice.[6] That determination depends on the nature of the information and the circumstances surrounding the hearing. A party is not obliged to produce evidence favorable to the opponent or to present the opponent's version of the case, and the failure to disclose all information on the issue is not ill practice unless concealment or deceit is involved. Moreover, a party may present only his version of the occurrence, as long as he does not use false or perjured testimony or forged documents.[7]
Plaintiff, in her petition for nullity, has not alleged any facts and circumstances which would have given rise in the original trial to any legal duty on AAA's part to disclose any information not related in the manager's testimony. Indeed, the manager did testify regarding the frequency of past violations, the fact that plaintiff was the first person (within his knowledge) to be discharged for such a violation, and the conflicts between plaintiff and other employees. Moreover, plaintiff has not specifically alleged that AAA's manager gave false testimony or produced forged documents.
We conclude that plaintiff's petition for nullity, when considered with the entire record of the original proceedings, simply seeks to present more of the same evidence on the same factual issues that have already been litigated without any restriction on her right to present evidence. While plaintiff may have received a different decision if she had presented all of the evidence originally, she is not entitled to keep retrying the case until she obtains a favorable result. The action for nullity was never intended for such a purpose. AAA is entitled, as a matter of law, to dismissal of the action. Enforcement of the judgment in favor of AAA is not inequitable or unconscionable.
*1224 Accordingly, the judgments of the lower courts are reversed. Judgment is now rendered granting the summary judgment and dismissing plaintiff's action for nullity at her costs.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
The question is whether plaintiff is disqualified from receiving unemployment benefits because her discharge was for "misconduct". LSA-R.S. 23:1601(2). Following administrative and judicial determination of disqualification, she filed a petition for nullity claiming fraud and ill practices. Two issues are presented:
(1) Does the petition state a cause of action?
(2) Were defendants entitled to summary judgment?

FACTS[1]
Plaintiff, Gloriadine Gladstone, was employed by American Automobile Association for over ten years. She sold memberships on a commission basis for $26.50 each, plus an enrollment fee of $9.00. During the Christmas season, A. A. A. members could donate memberships without an enrollment fee. New memberships disguised as Christmas gifts were sold by Ms. Gladstone and others for only $26.50. At a compulsory sales meeting on November 15, 1979, employees were told that spurious Christmas gifts would no longer be tolerated. Ms. Gladstone's absence at the meeting was excused. Ms. Gladstone sold new memberships in December of 1979 for $26.50. A. A. A. discharged her on December 12, 1979, allegedly because of violating company policy regarding Christmas sales.
Ms. Gladstone applied for unemployment benefits. A. A. A. contended that she was disqualified, but the Louisiana Department of Labor, Office of Employment Security, determined that Ms. Gladstone was entitled to benefits. A. A. A. appealed. There was an informal hearing by the appeals referee. The personnel manager of A. A. A., James Wilde, testified that Ms. Gladstone was fired for violating company policy about Christmas memberships. Wilde said Ms. Gladstone sold gift memberships from fictitious donors; that this was strictly forbidden; and that "an extra special effort" was made to prevent it in 1979. (Tr. 42) He stipulated that similar sales had been made in past years. Ms. Gladstone did not deny the practice. Her defense was that she did not know what transpired at the sales meeting. "And so I didn't go to the sales meeting. This is when they said that you definitely couldn't do this anymore. I hadnobody told me anything about it.... I went on like I was in the habit of doing." (Tr. 34)
The referee found that Ms. Gladstone neglected an obligation to learn what happened at the sales meeting, and her actions, contrary to the instructions at that meeting, constituted misconduct. Ms. Gladstone was found disqualified. The decision of the appeals referee was affirmed by the Board of Review.
Plaintiff sought judicial review. LSA-R.S. 23:1634. The trial court affirmed, concluding that the discharge "was justifiable because of her intentional fraudulent misconduct in selling Christmas gift memberships in December 1979." Judgment was signed on June 30, 1980, and no appeal was taken.
On August 13, 1980, plaintiff filed a motion to annul the judgment. The motion alleged "fraud or ill practices, inasmuch as the facts produced by the defendant, American Automobile Association, was not a true representation of the reason for the dismissal of the defendant, and further, that the American Automobile Association otherwise misrepresented the facts to the Appeals Referee." (Tr. 81) The trial court sustained a dilatory exception of improper use of summary procedure, ordered that the *1225 matter be converted into an ordinary proceeding, treated the motion as a petition and gave plaintiff five days in which to amend that petition. Plaintiff then filed a petition to annul the judgment, which, according to the trial court's order, amended the motion-petition. A. A. A. filed an exception of no cause of action and a motion for summary judgment. The trial court overruled the exception and denied the motion. The court of appeal refused to review the rulings. A writ was granted and the matter was remanded to the court of appeal "for ruling on questions of law presented." 396 So.2d 1347 (La., 1981). The court of appeal then affirmed the trial court's disposition of the exception and motion. 402 So.2d 254 (La.App. 4 Cir. 1981). Another writ was granted. 405 So.2d 532 (La., 1981).

THE EXCEPTION OF NO CAUSE OF ACTION
In the petition to annul the judgment, plaintiff alleged that the initial judgment of the appeals referee:
"... was obtained by fraud, ill practices and misrepresentation on the part of American Automobile Association in the following respects:
"a) Petitioner was terminated because of a violation of a directive in force in 1978 and 1979, with regard to the sale of Christmas memberships;
"b) That the directive was issued in 1978, but in fact, the directive was openly violated with the knowledge and tacit approval of supervisory personnel, including Mr. Jack Hyman, District Manager of American Automobile Association;
"c) That in 1979 the directive was again brought up, at which time Mr. Alfredo Cortez was the District Manager;
"d) That notwithstanding the reissuance of the directive, it was again openly violated by many of the employees, none of whom were terminated with the exception of Gloriadine B. Gladstone;
"e) That in 1979, the supervisory personnel were aware of the method that the Christmas memberships were sold, that in fact, the memberships were sold in violation of the directive and no action was taken against any other sales personnel;
"f) That as a matter of fact, the District Manager at the time of the termination of Mrs. Gladstone, Mr. Alfredo Cortez, was attempting to find reason to terminate Mrs. Gladstone, and so advised other personnel;
"g) That for a period of years, the method in which petitioner was selling Christmas memberships was, in fact, an established and accepted method, and she was not advised that she was doing anything improper until after she sold the memberships and after American Automobile Association accepted the memberships;
"h) That these facts were intentionally not brought to the attention of the Appeals Referee;
"i) Further, petitioner avers that it was not until after the Appeals Referee had rendered a decision that she discovered the evidence necessary to bring this petition." (Tr. 96-97)
LSA-C.C.P. art. 2004 provides that a judgment obtained by fraud or ill-practices may be annulled. Plaintiff Gladstone specifically alleged fraud and ill-practices. She also alleged with particularity the circumstances she felt constituted fraud. LSA-C.C.P. art. 856. In effect, her allegation is that Wilde's testimony about the reason for her discharge was false because other employees continued to sell sham Christmas gifts after the 1979 sales meeting but she was the only one discharged. See subsections (d) and (e) above and the allegations of the motion to annul. The referee's decision was based solely on Wilde's testimony. The only other testimony, Ms. Gladstone's, did not contradict his on the key question of whether other employees continued such sales after November 15, 1979. Since the hearing before the appeals referee, Ms. Gladstone alleges that she has discovered other employees also continued selling memberships disguised as Christmas gifts. See (i) above.
LSA-C.C.P. art. 2004 provides that a final judgment obtained by fraud or ill-practices *1226 may be annulled. Judicial review of the referee's decision was limited to questions of law. Any fraud or ill-practices at the hearing before the appeals referee resulting in erroneous factual findings would also be a ground for nullity of the trial court judgment. Wilde represented at the hearing that Ms. Gladstone was discharged for improper Christmas sales. If, as alleged by plaintiff, the prohibition against this practice was only enforced against Ms. Gladstone, she was discharged for extraneous reasons. The false representation by Wilde to the contrary constitutes perjury.
A party is not obliged to produce evidence favorable to his opponent, and failure of a party to disclose facts is not fraud. "If an unsuccessful litigant were permitted to attack a judgment as fraudulent on the ground that his opponent failed to disclose certain facts within his knowledge, which by the exercise of reasonable diligence the unsuccessful litigant could have ascertained for himself, there would be no finality to a judgment." First Nat. Life Ins. Co. v. Bell, 174 La. 692 at 699-700, 141 So. 379 at 381 (1932). However, plaintiff's allegations, which must be taken as true in considering the exception of no cause of action, indicate that Wilde not only failed to divulge certain information, but actually testified erroneously about the reason for Ms. Gladstone's discharge. The trial and appellate courts correctly concluded that plaintiff's petition to annul the judgment stated a cause of action.

SUMMARY JUDGMENT
In connection with the motion for summary judgment by A. A. A., plaintiff introduced the affidavit of her former immediate supervisor, Lisa Gourgues. Ms. Gourgues was employed by A. A. A. through July of 1980. She thus remained in the company's employ until after the trial court's judgment. Her affidavit states that, despite the directive against feigned Christmas gifts at the 1979 sales meeting, the directive continued to be openly violated by many of the employees and that none of them were terminated with the exception of Gloriadine B. Gladstone. The affidavit recites:
"7) That in 1979 I was supervisor over Gloriadine B. Gladstone and was aware of the method by which she was selling Christmas memberships, and in fact, others were selling them in a similar fashion, which violated the directive;
"8) That I was informed by other supervisory personnel at American Automobile Association that other management personnel, and more particularly, Mr. Alfredo Cortes, was attempting to find reason to terminate Mrs. Gladstone;
"9) That American Automobile Association accepted the memberships which Ms. Gladstone produced and then terminated her employment;"
This affidavit, in particular paragraph (7), raises a material issue of fact. Was Wilde's testimony that Ms. Gladstone was discharged for selling bogus Christmas memberships false? The issue requires trial on the merits. The motion for summary judgment by defendant, A. A. A., was correctly denied by the trial and appellate courts.[2]
I respectfully dissent.
NOTES
[1] Other reasons given for plaintiff's termination were that she had knowingly misrepresented coverage to a customer (a fact discovered only two days before the termination) and that she had used a customer's credit card number for a sale without authority. However, the appeals referee found that there was insufficient evidence supporting the other reasons and that the gift membership violation was the true cause of the termination.
[2] These factual allegations are essentially the same as the facts asserted in the affidavit of an AAA employee, which was filed by plaintiff in opposition to the motion for summary judgment.
[3] The combined pleading, urging an exception of no cause of action and a motion for summary judgment, is a much more useful procedural device than the exception alone. Since no evidence may be offered to controvert the exception of no cause of action, only the petition may be considered when the court rules on the exception. C.C.P. Art. 931. However, when the exception is pleaded along with a motion for summary judgment, any admissible evidence may be offered in support of the motion. Here, AAA introduced the entire record of the proceedings which led to the judgment denying unemployment benefits.
[4] Plaintiff herself testified that "it all boils down to our personality clash. Cortez don't have any use for me".
[5] Such evidence may be grounds for a timely motion for new trial. See C.C.P. Art. 1972.
[6] In First Nat'l Life Ins. Co. v. Bell, 174 La. 692, 141 So. 379 (1932), this court held that a petition, in which the plaintiff alleged that the adverse party obtained a judgment through fraud and ill practices by failing to disclose information within his knowledge, does not state a cause of action. The court concluded that an allegation that a judgment was obtained through exaggeration of the party's physical disabilities and through failure to disclose the true nature of her injuries did not state a cause of action. The court further noted that an unsuccessful litigant may not attack a judgment as fraudulent because the other party failed to disclose certain facts within his knowledge, when the plaintiff with reasonable diligence could have ascertained those facts himself.
[7] The theory that plaintiff was discharged because of race and gender discrimination is her version of the occurrence. Her evidence supporting this version was considered and rejected.
[1] The facts are restated because the author's understanding of the record differs somewhat from the majority's.
[2] An employer can discharge an employee without the employee being guilty of "misconduct" under LSA-R.S. 23:1601(2), but the employee is entitled to unemployment compensation benefits. A deliberate disregard of an employer's rules which shows lack of concern for the employer's interests does constitute misconduct. Gardere v. Brown, 170 So.2d 758 (La.App. 1 Cir. 1964). The word misconduct is construed in favor of benefits and against forfeiture. Ciufo v. Brown, 148 So.2d 459 (La. App. 4 Cir. 1963). The burden is on the employer to prove disqualification. If, as alleged, A. A. A.'s rule against fictitious Christmas gift memberships was not enforced against other employees, its violation by Ms. Gladstone would not constitute misconduct disqualifying her for unemployment benefits. The employer would have led her to believe the rule was not enforced. Further, the appeals' referee noted a negligent rather than deliberate violation of the rule by Ms. Gladstone. There is a substantial question whether a negligent failure to be informed is sufficient to constitute deliberate misconduct.