LOLLEY, J.
12Richard W. Adcock appeals the judgments of the First Judicial District Court, Parish of Caddo, State of Louisiana, one of which granted the motion for summary judgment in favor of James H. Ewing, Jr. and Amy Ewing and the other which denied his motion for partial summary judgment. For the following reasons, we affirm both judgments.
Facts
The genesis of this particular appeal is a lawsuit in the First Judicial District Court entitled “James EL Ewing and Amy Ewing *437 versus A-l Regional Pools & Patio, Inc. and Richard Adcock” (the “original proceeding”). As alleged in the original proceeding, in November 2003, James and Amy Ewing entered into a contract with A-l Regional Pools and Patio, Inc. (“A-l Pools”) for the construction of a svumming pool at the Ewings’ residence in Shreveport, Louisiana. Richard Adcock was employed by A-l Pools. The total price for the pool’s construction was to be $25,000.00, of which the Ewings paid $19,000.00 up front. The balance was |sto be paid in payments of $3,000.00 at stages during the pool’s construction. According to the Ewings, they paid one of the additional $3,000.00 payments to Adcock, but work stopped on the pool and was not completed. The Ewings had to hire another contractor to complete the work at a cost of $13,000.00 and had to satisfy a materials lien by a subcontractor in the amount of $3,852.04.
In June 2004, the Ewings filed their lawsuit against A-l Pools and Adcock, claiming that he was personally liable for A-l Pools’ breach of contract because “he is the alter ego of A-l Pools.” Adcock was served personally on August 25, 2004, with the lawsuit, but service was not made on A-l Pools. In their appeal brief, the Ew-ings claim that Adcock was served while housed at the Caddo Correctional Center — it is not completely clear for what crime he was serving time. No answer was ever filed by Adcock in the original proceedings, and in January 2005, the Ew-ings had a preliminary default entered against him. On April 11, 2005, the default judgment against Adcock was confirmed, and the next day the notice of judgment was mailed to Adcock. The default judgment in the original proceedings was not appealed and became a final judgment.
On April 10, 2006, Adcock filed his action to nullify the default judgment against him. Opposing motions for summary judgment were filed [4by the parties, and after a joint hearing, the trial court granted the Ewings’ motion for summary judgment, denying Adcock’s. Two judgments were entered, and this appeal by Adcock ensued.
Discussion
An action of nullity of judgment seeks to annul an improperly obtained judgment because of vices of form or substance. La. C.C.P. art.2001. A judgment may be annulled for vices of form when it has either been rendered against an incompetent not represented'as required by law;- against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid default judgment has not been taken; or by a court which did not have subject matter jurisdiction. La. C.C.P. art. 2002(A); Knutsen v. Prince, 40,109 (La.App.2d Cir.09/21/05), 911 So.2d 404. A judgment may also be annulled for vices of substance when it was obtained by fraud or ill practices. La. C.C.P. art. 2004(A). Trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, to which discretion reviewing courts will defer. Power Marketing Direct, Inc. v. Foster, 2005-2023 (La.09/06/06), 938 So.2d 662; Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983).
| fiThe purpose of an action for nullity is to prevent an injustice, which cannot be corrected through new trials and appeals. Belle Pass Terminal, Inc. v. Jolin, Inc., 2001-0149 (La.10/16/01), 800 So.2d 762. However, a party bringing an action attacking a judgment is not allowed to reargue old issues. Haney v. Davis, 2004-1716 (La.App. 4th Cir.01/19/06), 925 So.2d *438 591. The proper procedure to remedy a failure of proof is through a motion for a new trial and/or an appeal, and not through an action for nullity. Russland Enterprises, Inc. v. City of Gretna, 1998-676 (La.App. 5th Cir.01/26/99), 727 So.2d 1223, writ denied, 1999-0980 (La.05/28/99), 743 So.2d 669.
Specifically regarding a suit to annul a default judgment, La. C.C.P. art. 2002(A)(2) provides that a final judgment shall be annulled if it is rendered against a defendant against “whom a valid judgment by default has not been taken.” National Income Realty Trust v. Paddie, 1998-2063 (La.07/02/99), 737 So.2d 1270. In National Income, the court went on to note, “It is well settled that this article applies only to technical defects of procedure or form of the judgment. The failure to establish the prima facie case required by La. C.C.P. art. 1702 is not a vice of form. A failure of proof must be raised in a motion for new trial or by appeal, not by an action for nullity.” Id. at 1271 (citations omitted).
| ^Adcock sought annulment of the Ewings’ défault judgment against him, claiming that the default judgment was not valid, a vice of - form, and it was obtained by ill practices. Whereas the trial court did not believe that there was sufficient evidence to sustain a default judgment against Adcock personally, it correctly noted that “insufficiency of evidence/failure to establish a prima facie case in confirming a default is not a valid basis to nullify a judgment.” On appeal, Adcock argues that the trial court erred in granting the Ewings’ -motion for summary judgment, dismissing his claim to annul the default judgment. We disagree.
Initially, Adcock claims that summary judgment was inappropriate because genuine and disputed material facts existed in this litigation. Specifically, he maintains that two genuine issues of material fact existed which made the Ewings’ summary judgment improper. Summary judgment can be granted only when a genuine issue of material fact does not exist. La. C.C.P. art. 966(B) and (C). Whether a fact is material depends on the substantive law that governs the claims in a particular case. Pritchard v. American Freightways Corp., 37,962 (La.App. 2 Cir. 12/10/03), 862 So.2d 476. A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Jones v. Estate of Santiago, 2003-1424 (La.04/14/04), 870 So.2d 1002. First, |7Adcock submits that he had been dismissed by the Ewings in the 2005 proceeding, making a default judgment against him absolutely null. Second, he states that the default judgment was obtained through ill practices because it was different in kind from that demanded in the petition.
As to the dismissal argument, we agree with the trial court that it has no merit. Adcock takes the position that he was dismissed from the original proceeding on January 3, 2005, when the Ewings’ attorney, Todd Benson, attempted to enter a preliminary default against Adcock. Apparently, when the “drop-slip” was completed by Benson’s legal assistant, instead of checking the “default” option, the “dismissal” option was checked. During the original proceedings Benson explained that he noticed the mistake and had his legal assistant call the deputy clerk at the clerk’s office. According to Benson, the minute clerk informed his 'assistant that she would check the “default” box and that Benson should forward another default slip to the clerk’s office. No action was ever taken on a “dismissal” of Adcock from the litigation, and it is clear that a judgment of dismissal was never entered by the trial court dismissing him. Benson submitted a second default slip to the clerk’s office, and *439 the deputy clerk noted the date as January 3, 2005 (the date of submission of the original erroneous slip). On April 11, 2005, the | ^default against Adcock was ultimately confirmed in the original proceedings.
The trial court noted that “[sjignificantly, the clerical mistake is not legally tantamount to a judgment of dismissal.” We agree. The Ewings’ attorney made a simple mistake, which he promptly rectified. There was no formal motion to dismiss made and no action was taken by the trial court on the mistake made by the Ewings’ attorney. Importantly, the trial court never entered a judgment dismissing Adcock from the original proceedings, which would be required in order to effect a dismissal of any party to the litigation. See La. C.C.P. arts. 1671, et seq. Consequently, we conclude that this alleged issue is not genuine and the trial court correctly did not let it stand in the way of granting a summary judgment in favor of the Ewings.
Adcock also maintains that the default judgment was obtained by ill practices sufficient to warrant the annulment of the Ewings’ default judgment as provided for in La. C.C.P. art. 2004. Specifically, he maintains that the scope of the default judgment was different in kind from the demands of the petition. The Louisiana Supreme Court reviewed the historical development of La. C.C.P. 2004 and noted the following criteria for an action in nullity and determining what is an ill practice: (1) that the circumstances under which the judgment was rendered showed the | ¡¡deprivation of legal rights of the litigant seeking relief; and (2) that the enforcement of the judgment would have been unconscionable and inequitable. See Belle Pass Terminal, supra; Gladstone v. American Auto. Ass’n, Inc., 419 So.2d 1219 (La.1982). An action to annul based on art. 2004 is not limited to actual fraud or intentional wrongdoing. It encompasses those situations where judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right. Kem Search, supra.
Here, it does not appear that an ill practice as to this default judgment occurred. Procedurally, the Ewings followed the proper course in obtaining the default judgment. Additionally, considering the record before us, the enforcement of the judgment would not have been unconscionable and inequitable. However, even if we were to consider the actual specifics of Adcock’s claim of ill practices, this argument has no merit.
According to Adcock, under the facts asserted in the Ewings’ original petition, they sought recovery for breach of contract against A-l Pools and him personally under an alter ego theory. However, Ad-cock states that the default judgment was granted on the grounds of rescission of the contract based on error or fraud, making the default judgment in violation of La. C.C.P. art. 1703 which states in pertinent part that a “judgment by default |10shall not be different in kind from that demanded in the petition.” As stated in the Official Revision Comment, “This article is essential to prevent the judgment by default from going beyond the scope of the prayer.”
The transcript of the default confirmation hearing reflects that after reviewing the record and hearing James Ewings’ testimony, the trial court asked Mr. Benson, the Ewings’ attorney:
Judge Garrett: What amount is it that you contend you are entitled to?
Mr. Benson:. Well, Your Honor, there was twenty-two thousand paid to Mr. Adcock. We would ask for rescission *440 and refund of that amount, plus [$3,852.04] on the lien....
Thus, it appears that based on the use of the word “rescission” to describe the relief his client sought, Adcock takes the position that the default judgment exceeded the scope of the pleadings against him. Notably, the trial court never stated that the contract between the parties was rescinded or that the monetary award was based on a rescission of the contract between the parties. It appears that the only reference to rescission was as used by the Ewings’ attorney in a request for a refund of money paid under the contract.
Moreover, the default judgment in this case did not exceed the scope of the prayer in the amount of the monetary award to the Ewings. The Ewings’ petition stated the total contract amount, as well as the amount factually paid to Ad-cock by the Ewings ($22,000.00). The petition also included allegations that two liens by subcontractors had been paid, but failed to set forth the precise amount. Although the prayer did not contain the total amount of monetary damage to the Ew-ings, it sought “the entirety of the damage caused to them” as a result of Adcock’s and A-l Pools’ alleged breach of the contract, which amount was clearly set forth in the allegations of the petition.[1]
At the default confirmation hearing, James Ewing testified that Adcock had not completed the pool for which he had paid Adcock personally $22,000.00. Additionally, Ewing paid a subcontractor $3,852.04 to release a lien on his property as a result of Adcock’s nonpayment to the subcontractor. The trial court awarded the Ewings these amounts in the default judgment. We do not believe the scope of the judgment was different in kind from the demands made in the petition, which demands were based on a contract between the parties, despite the use of the word “rescission” by the Ewings’ attorney at the confirmation hearing.
Further, in essence Adcock argues that the Ewings’ demands in their petition were different than the relief they obtained, in other words, they did not prove or establish a prima facie case regarding the allegations made in their petition to achieve the relief they were granted. He argues they claimed |12breach of contract and were awarded monetary damages based on rescission of contract. We note the directive by the Supreme Court that the action to annul judgments “applies only to technical defects of procedure or form of the judgment. The failure to establish the prima facie case required by La. C.C.P. art. 1702 is not a vice of form. A failure of proof must be raised in a motion for new trial or by appeal, not by an action for nullity.” National Income, supra at 1271. Nonetheless, even considering the merits of the claim as discussed, we do not believe the trial court erred.
In his final assignment of error, Adcock argues that the trial court erred in not disqualifying the Ewings’ attorney when he appeared as a witness in support of their motion for summary judgment. Specifically, Mr. Benson submitted his own *441 affidavit in support of the Ewings’ motion for summary judgment regarding the issue of the erroneous “drop slip,” which he asserts was simply a clerical error that was quickly noticed and rectified with the clerk’s office. Also attached in support of the motion was the affidavit of the legal assistant who made the mistake.
According to Adcock, Louisiana Rules of Professional Conduct,- Rule 3.7 provides:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
(I) the testimony relates to an uncontested issue;
113(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer’s firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.
Despite the Ewings’ argument to the contrary, Rule 3.7 can apply to a summary judgment proceeding. We do not read the word “trial” in the rule to be so restrictive as to refer only to that court proceeding which reaches a final determination in a lawsuit. The rule has been properly considered and applied in pretrial proceedings. See Franklin Credit Management Corp. v. Gray, 2007-1433 (La.App. 4th Cir.01/14/09), 2 So.3d 598, writ denied, 2009-0476 (La.04/17/09), 6 So.3d 795.
However, in this case, we do not believe the admission of (and -perhaps reliance on) Mr. Benson’s affidavit in support of the Ewings’ motion to be a violation of Rule 3.7, because it pertained to the “nature of ... legal services,” an exception under subsection (a)(2) of the rule. Adcock raised the issue of whether Mr. Benson had dismissed Adcock from the litigation, which Mr. Benson maintains was a result of a clerical mistake. In performing legal services on the Ewings’ behalf, Mr. Benson (through hisj^legal assistant) made a mistake and checked off the wrong box on the “drop slip” provided by the court to enter a preliminary default. This error was promptly corrected by his office. The clerical error had nothing to do with the merits of the case, but had to do with Mr. Benson’s legal services. It was a simple clerical mistake, and Mr. Benson’s affidavit only served to explain how his office had erred and remedied the problem — i.e., the nature of his legal services. There was no violation of Rule 3.7 here, and this ai'gument is without merit.
Finally, we note that Adcock was personally named a defendant in the original proceeding brought by the Ewings, and he took no action to defend himself in that proceeding. Moreover, Adcock did not appeal the default judgment obtained by the Ewings, at- which point he could have properly raised some of the issues he has raised through his action to annul the judgment, which issues perhaps warranted serious consideration on appeal. As this court noted in Knutsen, supra at 408, “the nullity action is governed by specific procedural articles,” which rules we must adhere to strictly in order to protect the sanctity of final judgments. Here, Adcock failed to prove that the default judgment should have been annulled. The trial court was not in error in its determination.
Conclusion
11sThe judgment of the trial court which granted the motion for summary judgment in favor of James H. Ewing, Jr. and Amy Ewing is affirmed, as is the' judgment which denied the motion for partial summary judgment by Richard W. Adcock. *442 All costs of these proceedings are assessed to Adcock.
AFFIRMED.

. Whereas subsection (A) to La. C.C.P: art. 893 prohibits the inclusion of a specific monetary amount of damages in the allegations or prayer for relief of any original, amended, or incidental demand, subsection (B) of the same article states that the provisions of subsection (A) are inapplicable to a suit on a conventional obligation, which is at issue in the case at hand. We do not read subsection (B) to mandate inclusion in the prayer of an explicit statement of the monetary damages where a conventional obligation is at issue, especially if stated in the allegations of the demand, only that the plaintiff is not prohibited from including such a request if she so chooses.