STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-376

CAMILLE LANDRY, ET AL.

VERSUS

PEDIATRIC SERVICES OF AMERICA, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20132251
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Marc T. Amy, Judges.

REVERSED AND REMANDED.

John L. Hammons
Nelson & Hammons
705 Milam Street
Shreveport, LA  71101
(318) 227-2401
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Ryan Landry, et al.

James P. Lambert
Post Office Box 53083
Lafayette, LA  70505-3083
(337) 261-3737
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Camille Landry, et al.

J. Michael Veron
J. Rock Palermo, III
Veron, Bice, Palermo & Wilson, L.L.C.
Post Office Box 2125
Lake Charles, LA   70602-2125
(337) 310-1600
COUNSEL FOR DEFENDANTS/APPELLEES:
       PSA of Lafayette, LLC
       P S A of Lafayette, LLC
       Pediatric Services of America, Inc.

Monica A. Frois
Brandy N. Sheely
Baker Donelson Bearman Caldwell & Berkowitz, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA   70170-3600
(504) 566-5200
COUNSEL FOR DEFENDANTS/APPELLEES:
       PSA of Lafayette, LLC
       P S A of Lafayette, LLC
       Pediatric Services of America, Inc.

Marc W. Judice
James J. Hautot
Judice & Adley
Post Office Drawer 51769
Lafayette, LA   70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANTS/APPELLEES:
       Dr. Rosaire Josseline Belizaire
       Dr. Cong T. Vo

Nadia de la Houssaye
Jones Walker, L.L.P.
Post Office Drawer 3408
Lafayette, LA   70502-3408
(337) 262-7600
COUNSEL FOR DEFENDANTS/APPELLEES:
       Louisiana Patient's Compensation Fund
       Dr. Vasanth Nalam

**AMY, Judge.**

The plaintiffs filed a petition seeking to annul an underlying judgment rendered following a jury trial. The plaintiffs alleged that, during the trial, a juror spoke to the trial court regarding her concerns about continuing to serve on the jury and that the trial court did not advise the parties of that conversation. This decision not to disclose the juror communication, the plaintiffs argued, constituted a condition rendering the judgment null under La.Code Civ.P. art. 2004. The trial court dismissed the plaintiffs' petition after sustaining the defendants' motion to strike the affidavit of the juror and, in turn, the defendants' exceptions of no cause of action. The plaintiffs appeal. For the following reasons, we reverse the ruling of the trial court and remand for further proceedings.

## Factual and Procedural Background

The plaintiffs, Camille Landry and Ryan Landry, are the parents of a minor child who experienced breathing distress and, ultimately, brain damage from a hypoxic brain injury. The plaintiffs filed the underlying matter seeking damages related to that condition from various health care providers and a medical equipment provider. Following a multi-week trial, the jury returned a verdict attributing the fault to a nonparty physician. That verdict was affirmed on appeal. *See Landry v. PSA of Lafayette, LLC*, 12-277 (La.App. 3 Cir. 11/7/12), 120 So.3d 707. Thereafter, the plaintiffs filed a writ application with the Supreme Court of Louisiana.

Before resolution of that writ application, however, the plaintiffs filed a "Petition to Annul Judgment Pursuant to La.C.C.P. Article 2004." In that separate proceeding, the plaintiffs alleged that during the course of trial, one of the jurors approached the initial trial court judge and first informed him that the multi-week

trial had created difficulties with her work schedule. Later, and at issue here, the juror informed the trial judge that during the course of the presentation of evidence she had identified her name and writing on hospital records for the minor child that were published to the jury. She also explained that she recalled having a conversation with fellow nurses about one of the child's medical conditions. Referencing the attached affidavit of the juror, the petition suggested that the juror expressed to the trial judge "that she did not feel it was appropriate since she had actually treated the child and recalled having discussed the condition of 'cortical thumb' with other nurses."

The petition alleged that the trial judge "responded to [the juror] that she was not to disclose this information to any other jurors and also told her that he was not going to disclose this fact to the lawyers representing the litigants. He then instructed her to continue to serve as a juror." The plaintiffs asserted, however, that the trial judge "had a legal obligation to notify the parties and to allow them to question this juror in open court." The failure to do so, the plaintiffs alleged, tainted the verdict and rendered the judgment "null as a matter of law." For these reasons, the plaintiffs sought a full trial on the petition to annul judgment and a declaration that the underlying judgment is null.

In response, Pediatric Services of America, Inc. (PSA), one of the defendants in the underlying matter, filed an exception of no cause of action and submitted that the plaintiffs' "nullity action is barred as a matter of law by its failure to exercise due diligence during *voir dire.*" In a supporting memorandum, PSA developed the argument, noting that the subject juror stated in an affidavit attached to the petition that she had disclosed during voir dire that she previously worked as a neonatal nurse, had been employed at the hospital where the child was

hospitalized, and that she worked certain cases with several of the defendant physicians. PSA noted therein that the juror did not otherwise retreat from her voir dire admission that she could be a fair and impartial juror. PSA further argued that, in light of the underlying facts revealed at voir dire, the petition does not allege anything regarding the juror's employment as a nurse that could not have been discovered with more fully developed voir dire questioning by the plaintiffs. Otherwise, PSA asserted that the plaintiffs did not demonstrate that there was any ill practice in the trial judge's decision not to reveal the conversation with the juror. Instead, PSA suggested that no "rule, regulation, or standard" required the trial court to alert the parties about the conversation with the juror. Finally, PSA argued that the petition did not contain any facts demonstrating a causal relationship between the decision not to disclose the conversation with the juror and the ultimate jury's verdict. Thus, PSA alleged in its exception, the petition does not set forth a cause of action.

Thereafter, two of the defendant physicians, Dr. Cong T. Vo and Dr. Rosaire Josseline Belizaire, filed a motion to strike/exclude the juror's affidavit and related allegations. Namely, the defendant physicians argued that the affidavit, attached to the plaintiffs' petition, violated La.Code Evid. art. 606(B) since it contained statements in an alleged attempt to "impeach the jury's verdict[.]" Therefore, the defendant physicians asked the trial court considering the petition to annul to strike the affidavit.

Additionally, the defendant physicians filed an exception of no cause of action and alternative motion for summary judgment. In their memorandum in support, the defendant physicians contend that the plaintiffs' petition largely advances conclusions and not underlying facts that would demonstrate the

3

occurrence of an ill practice. As did PSA, the defendant physicians asserted that there was no legal obligation for the trial judge to reveal the juror disclosure to the parties, the affidavit did not indicate that the juror was not impartial, and the plaintiffs did not allege that the juror discussed her recollections with the other members of the jury. Finally, the defendant physicians also argued that a more complete voir dire process could have revealed the information discovered during the midst of trial. In support of their alternative motion for summary judgment, the defendant physicians attached excerpts from the portions of the jury voir dire in which the juror was questioned regarding her work as a neonatal nurse and her familiarity with some of the medical issues that would be before the court.

The petition to annul judgment was assigned to Judge Edward Rubin, who heard the motion to strike, exceptions of no cause of action and motion for summary judgment. Providing written reasons for ruling in a minute entry, Judge Rubin first granted the motion to strike, finding that the affidavit did, in fact, address areas prohibited by La.Code Evid. art. 606(B). The trial court further granted the defendants' exceptions of no cause of action and, in turn, determined that the defendant physicians' alternative motion for summary judgment was rendered moot. Following that ruling, Judge Rubin entered judgment sustaining a motion to strike the juror's affidavit and an exception of no cause of action filed by the Louisiana Patient's Compensation Fund and another defendant physician, Dr. Vasanth Nalam. The judgment indicated that it did so upon consideration of its previously rendered minute entry.

The plaintiffs appeal the judgments entered in favor of the various defendants and assign the following as error:

4

I.     The trial court in the nullity action committed reversible error by striking the Affidavit of Kim Mayer Gisclaire, a civil juror in the underlying cause under Article 606(B)of the Code of Evidence. Since the Affidavit in no way related to jury deliberations but rather dealt with an undisclosed *ex parte* communication between the juror and the trial judge four days before the end of the trial concerning the juror's continued ability to be a fair and impartial juror. The trial judge in the nullity action committed reversible error since Article 606(B) of the Code of Evidence is simply not applicable to the Affidavit in question.

II.    The trial court in the nullity action committed reversible error in granting an exception of no cause of action and in ruling that Judge Edward Broussard had no duty to advise counsel of record of an *ex parte* communication between himself and a trial juror who expressed doubts to him about her continued ability to be a fair and impartial juror, and in ruling as a matter of law that Judge Broussard had the legal discretion to decide unilaterally to allow the juror to continue to serve without advising counsel of record. The trial court in the nullity action committed clear error since the failure of the judge in the underlying case constitutes a deprivation of the due process right to cross examine jurors in such a situation under Article 1769(B) of the Louisiana Code of Civil Procedure.

III.   The trial court in the nullity action committed reversible error in granting an exception of no cause of action and in ruling that plaintiffs failed to allege facts which could establish a causal link between the improper *ex parte* communication not revealed to counsel and the jury verdict sought to be nullified. The trial court in the nullity action committed reversible error since any verdict and judgment which follows an improper *ex parte* communication between the judge and a juror is considered tainted and null as a matter of Louisiana law.

**Discussion**

*Motion to Strike*

Without elaboration in the minute entry, Judge Rubin granted the motions to strike,[1] finding that the affidavit was inadmissible under La.Code Evid. art. 606(B).

---

[1] Louisiana Code of Civil Procedure Article 964 provides that: "The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter."

That article, which pertains to the disqualification of a juror as a witness provides, in part, that:

> **B.** **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith*, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror . . . [.] Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

La.Code Evid. art. 606(B)(emphasis added).

After review, we find that the juror's affidavit and related allegations do not, on their face, implicate La.Code Evid. art. 606(B). Clearly, the plaintiffs' petition here seeks to annul the underlying judgment and the affidavit and the related allegations were offered in support of that petition. However, the juror's affidavit does not address the jury's deliberation or the juror's mental processes in connection therewith.

Rather, the affidavit addresses events that occurred *before* deliberations began and it is offered in support of a petition that questions whether those events should have been made known to the parties so that they could consider the appropriateness of whether the juror should be allowed to continue to serve or whether the use of an alternate juror was required.[2] In this sense, the deliberations

---

[2] In the subject affidavit, the juror sets forth the information she provided to counsel when questioned during voir dire, stating:

> In my examination to become a juror, I revealed to the parties that . . . I formerly had been a neonatal nurse working at Women's and Children's Hospital in Lafayette, Louisiana. I further revealed that I had worked certain cases with three of the defendants, Dr. Vasanth Nalam, Dr. Cong Vo and Dr. Rosaire Belizaire. In my questioning, I indicated that despite the fact that I had worked with them, that I could be a fair and impartial juror and I believed this to be so at the outset of the trial.

and the juror's thought processes at that more distant point in time are largely irrelevant, notwithstanding the fact that such evidence would be excluded by La.Code Evid. art. 606(B).

Accordingly, we reverse the granting of the motion to strike the affidavit of the juror and the petition's related allegations.

*Fraud or Ill Practices*

The plaintiffs' remaining two assignments of error address the petition to annul judgment pursuant to La.Code Civ.P. art. 2004. That article provides that: "A final judgment obtained by fraud or ill practices may be annulled." La.Code Civ.P. art. 2004(A). Such an action to annul a judgment on those grounds "must be brought within one year of the discovery by the plaintiff in the nullity action of

---

Subsequently in the affidavit, the juror explained that, after one week of trial, she began to experience scheduling and financial problems associated with her work and the contemporaneous court proceedings. She explained that she and another juror expressed their concerns to the trial judge, but that he informed them the employer's actions were beyond his control and that she would have to continue serving as a juror. She stated that she also informed him that she "was feeling very uncomfortable with continuing to serve as a juror because much of the evidence was starting to involve friends and people I had worked with, such as Drs. Vo and Belizaire. He instructed us to continue serving[.]"

The juror further explained that, later during the trial, she began to associate one of the medical conditions experienced by the minor child with conversations she recalled having about the condition with one of the "staff whose notes were being presented in evidence." Even later, she recognized her own name and writing as a neonatal nurse treating the minor child when "certain medical records were broadcast onto a screen for viewing by the jury[.]" The juror explained that:

> At the next break, I realized that I needed to speak to Judge Broussard and asked to do so. I spoke to Judge Broussard, who was also accompanied by his law clerk, Casey Blanchette. I told him that I had seen my notes and my name as a treating nurse on the case of Tai Landry. I did not feel it was appropriate since I had actually treated the child and I recall discussing the condition of "cortical thumb" in connection with her treatment. Judge Broussard told me that "you are not to disclose this information to the other jurors and I am not going to disclose this to the lawyers." He instructed me to continue to serve as a juror.

The juror explained that she continued to do so. However, the juror stated in the affidavit that she was "bothered about the meeting with Judge Broussard" and eventually provided the subject affidavit to Ms. Landry's attorney.

the fraud or ill practices." La.Code Civ.P. art. 2004(B). *See also Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

Notably, the Louisiana Supreme Court has explained that La.Code Civ.P. art. 2004 is not limited to situations involving actual fraud or intentional wrongdoing. *Kem Search*, 434 So.2d 1067. Rather, it is "sufficiently broad enough to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, *and* where the enforcement of the judgment would be unconscionable and inequitable." *Power Marketing Direct, Inc. v. Foster*, 05-2023, p. 16 (La. 9/6/06), 938 So.2d 662, 673 (emphasis added). *See also Wright v. Louisiana Power & Light*, 06-1181, p. 24 (La. 3/9/07), 951 So.2d 1058, 1074 (wherein the supreme court addressed a nullity action in the context of a party's alleged failure to disclose the existence of certain physical evidence. The supreme court concluded that "[a]bsent a specific discovery request or 'knowing concealment,' failing to disclose information that might have been helpful to the opposing party's case does not constitute fraud or ill practice if with, reasonable diligence, the party could have ascertained the information himself.") However, the supreme court has cautioned that: "It is imperative that courts review a petition for nullity closely as an action for nullity based on fraud or ill practices is not intended as a substitute for an appeal or as a second chance to prove a claim that was previously denied for failure of proof." *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 01-0149, p. 5 (La. 10/16/01), 800 So.2d 762, 766.

With that framework in mind, we turn to consideration of the defendants' challenges to the petition for nullity.

*Exception of No Cause of Action*

As explained above, both PSA and the defendant physicians filed an exception of no cause of action. Judge Rubin granted those exceptions, finding that the plaintiffs failed to show a basis for the nullity action under either La.Code Civ.P. art. 1769(B) or under the Code of Judicial Conduct.

Within the context of the peremptory exception, a "cause of action" is defined as the operative facts giving rise to a plaintiff's right to judicially assert the action against the defendant. *State, Div. of Admin. v. Infinity Sur. Agency*, 10-2264 (La. 5/10/11), 63 So.3d 940. The exception of no cause of action is used to test the legal sufficiency of the petition and inquires whether the law affords a remedy based on the facts alleged in the pleading. *Id.* As no evidence may be introduced to support or challenge the exception, the trial court considers whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Id.* All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of the sufficiency of a petition so as to afford litigants their day in court. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So.3d 876. It is the moving party who must bear the burden of demonstrating that the petition states no cause of action. *Id.* On review of a trial court's judgment on the exception, an appellate court considers the matter de novo since the exception raises a question of law. *Id.*

After review of the petition, we find that it does, in fact, sufficiently set forth facts establishing the existence of a cause of action. As noted by the plaintiffs, Louisiana Code of Civil Procedure Article 1769(B) provides that: "Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to

perform their duties." The plaintiffs here alleged facts in support of their view that the subject juror may have become unable or disqualified to perform her duties during the course of trial, thereby invoking the operation of Article 1769. Certainly, as recounted by the juror in the affidavit and repeated in the petition, the juror "expressed some discomfort with continuing to serve as a juror" to the trial judge because of the revelations regarding her potential involvement in the care of the child and that "she did not feel that it was appropriate[.]" While these statements are perhaps vague and not ultimately indicative that the juror had become unable or unqualified to serve due to bias, the statements are not insignificant. Thus, we find that they are sufficient to allege the existence of a cause of action on the issue of whether some improper procedure or practice deprived the plaintiffs of an opportunity to consider/challenge the juror's continued service. Significantly, in consideration of an exception of no cause of action all doubts are resolved in favor of maintaining the petition. *See Jackson*, 144 So.3d 876.

Accordingly, we find error in the sustaining of the exception of no cause of action. We reverse that ruling and deny the exception.

Finally, we note that the defendant physicians filed an alternative motion for summary judgment and supported that motion with excerpts from the voir dire transcript which contains questioning between the parties and the subject juror regarding her work as a neonatal nurse. However, in light of its ruling on the exceptions of no cause of action, the trial court determined that the motion for summary judgment was moot. As the trial court did not address the alternative motion for summary judgment, we do not review that motion for the first time on appeal. Rather, we remand this matter for the trial court's consideration of the

10

alternative motion for summary judgment and for further proceedings. *See, e.g., Mouton v. Hebert's Superette, Inc.*, 10-787, pp. 9-10 (La.App. 3 Cir. 12/8/10), 53 So.3d 561, 566 (wherein a panel of this court explained that, in order "[t]o preserve the proper allocation of functions between trial and appellate courts, an appellate court may remand to the trial court instead of conducting a de novo review.").

## DECREE

For the foregoing reasons, the trial court's judgment is reversed and judgment is entered as follows:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion to Strike Juror Affidavit and Related Allegations by Plaintiff filed by Dr. Cong Vo and Dr. Rosaire Belizaire be, and is hereby, **DENIED**.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Peremptory Exception of No Cause of Action filed by Dr. Cong Vo and Dr. Rosaire Belizaire and the Peremptory Exception of No Cause of Action filed by Pediatric Services of America, Inc. be, and are hereby, **DENIED**.

This matter is remanded for consideration of the Alternative Motion for Summary Judgment filed by Dr. Cong T. Vo and Dr. Rosaire Josseline Belizaire as well as for further proceedings. Costs of this appeal are assigned equally to the defendants appellees, Drs. Vo and Belizaire, Pediatric Services of America, Inc., and The Louisiana Patient's Compensation Fund on Behalf of Dr. Vasanth Nalam.

**REVERSED AND REMANDED.**