STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-899

CAMILLE LANDRY, INDIVIDUALLY
AND ON BEHALF OF HER MINOR CHILD,
TAI LANDRY, AND RYAN LANDRY,
INDIVIDUALLY AND ON BEHALF OF
HIS MINOR CHILD, TAI LANDRY

VERSUS

PEDIATRIC SERVICES OF AMERICA, INC.,
PSA OF LAFAYETTE, LLC, DR. CONG VO,
DR. ROSAIRE BELIZAIRE, DR. VASANTH NALAM,
AND LOUISIANA PATIENT'S COMPENSATION FUND

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2013-2251, DIV. "D"
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese, Judges.

Cooks, J., concurs and assigns written reasons.

AFFIRMED IN PART;
REVERSED IN PART.

**James P. Lambert**
**315 South College Road, Suite 146**
**Post Office Box 53083**
**Lafayette, Louisiana 70505-3083**
**(337) 261-3737**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
　　**Camille Landry, individually and on behalf of**
　　**her minor child, Tai Landry**

**John L. Hammons**
**Nelson & Hammons**
**705 Milam Street**
**Shreveport, Louisiana 71101**
**(318) 227-2401**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
　　**Ryan Landry, individually and on behalf of**
　　**his minor child, Tai Landry**

**Nadia M. de la Houssaye**
**Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.**
**600 Jefferson Street, Suite 1600**
**Post Office Drawer 3408**
**Lafayette, Louisiana 70502-3408**
**(337) 262-9000**
**COUNSEL FOR  DEFENDANT/APPELLEE:**
　　**Louisiana Patient's Compensation Fund**
　　**on behalf of Dr. Vasanth Nalam**

**J. Michael Veron**
**J. Rock Palermo, III**
**Veron, Bice, Palermo, & Wilson L.L.C.**
**721 Kirby Street**
**Post Office Box 2125**
**Lake Charles, Louisiana 70602-2125**
**(337) 310-1600**
**COUNSEL FOR DEFENDANT/APPELLE:**
　　**Pediatric Services of America, Inc.**

**Monica A. Frois**
**Baker, Donelson, Bearman, Caldwell, & Berkowitz, P.C.**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, Louisiana 70170-3600**
**(504) 566-5200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
　　**Pediatric Services of America, Inc.**

**Marc W. Judice**
**James J. Hautot, Jr.**
**Judice & Adley**
**926 Coolidge Boulevard**
**Post Office Drawer 51769**
**Lafayette, Louisiana 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Dr. Rosaire J. Belizaire and**
    **Dr. Cong T. Vo**

**GENOVESE, Judge.**

In this suit seeking to nullify the judgment rendered in an underlying medical malpractice and general negligence action, Plaintiffs, Camille Landry, individually and on behalf of her minor child, Tai Landry, and Ryan Landry, individually and on behalf of his minor child, Tai Landry (collectively Landry), appeal the trial court's judgment on cross-motions for summary judgment denying Landry's motion for summary judgment and granting the motion for summary judgment of Defendant, Pediatric Services of America, Inc. (PSA), thereby dismissing Landry's claims against PSA. PSA has answered the appeal relative to the trial court's grant of Landry's motion to strike an affidavit offered in support of its motion. For the reasons that follow, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

The minor child, Tai Landry, was admitted to Women's and Children's Hospital in Lafayette, Louisiana, where she came under the care and treatment of several physicians. She was administered supportive care with medical equipment provided by PSA. As a result of alleged medical malpractice, Landry filed suit, naming several treating physicians as defendants and asserting a general negligence claim against PSA.

The underlying lawsuit was tried over the course of several weeks before a jury, which returned a verdict attributing one hundred percent of the fault to a nonparty physician. Thereafter, a lengthy procedural history followed, the details of which are set forth in a prior opinion of this court in *Landry v. Pediatric Services of America, Inc.*, 14-376 (La.App. 3 Cir. 10/15/14), 149 So.3d 1012, *writs denied*, 14-2381, 14-2385 (La. 1/9/15), 157 So.3d 1112.

The instant matter was instituted by a "Petition to Annul Judgment Pursuant to La.C.C.P. Article 2004" filed by Landry, which alleged that the judgment should be rendered null due to ex parte communication occurring during the jury trial between the trial judge, Judge Broussard,[1] and a sitting juror, Kim Mayer (now Kim Gisclaire), which the trial court did not disclose to the parties. Neither party disputes that there was ex parte communication between the judge and Ms. Gisclaire; rather, the issue presently before this court is whether the ex parte communication resulted in "[a] final judgment obtained by fraud or ill practices" and, therefore, constitutes a nullity pursuant to La.Code Civ.P. art. 2004(A) as a matter of law.

Landry filed a motion for summary judgment which was supported, in part, by an affidavit of the former juror, Kim Mayer Gisclaire, and an affidavit of Casey Blanchette, Judge Broussard's law clerk during the jury trial. PSA filed a cross-motion for summary judgment, which was supported by accompanying exhibits including an affidavit of Kizzy Dixon, the foreperson of the jury. Landry, thereafter, moved to strike the affidavit of Ms. Dixon as inadmissible.

Following a hearing, the trial court entered a minute entry granting Landry's motion to strike Ms. Dixon's affidavit, denying Landry's motion for summary judgment, and granting PSA's motion for summary judgment. The trial court signed a concomitant judgment on June 3, 2015, from which Landry has appealed, and from which PSA has answered the appeal.

## ASSIGNMENTS OF ERROR

Landry presents the following assignments of error for our review:

---

[1]Judge Broussard presided over the underlying jury trial. When filed, the petition to annul was assigned to Judge Rubin, who heard and ruled upon the cross-motions for summary judgment and the corresponding motion to strike.

2

I. The trial court in the nullity action committed reversible error in denying [Landry's] Cross[-]Motion for Summary Judgment after [D]efendant, [PSA,] judicially admitted (in writing and in open court) all key "operative facts giving rise to [Landry's] right to assert the nullity action."

II. The trial court in the nullity action committed reversible error by ruling that the admitted *ex parte* communication between the trial judge and the civil juror and the admitted failure of the trial judge to inform the parties of the juror's concerns over her continued jury service did not, as a matter of law, constitute a violation of Louisiana Code of Civil Procedure Article 1769 (B).

III. The trial court in the nullity action committed reversible error in ruling that [Landry was] barred from asserting the nullity action due to [the] alleged failure to exercise due diligence to uncover and expose in voir dire the future concerns of the juror which led to the admitted *ex parte* communication with the trial judge.

IV. The trial court in the nullity action committed reversible error in ruling as a matter of law that there existed no causal connection between the alleged ill practice and (through violation of La.[Code Civ.P. art.] 1769(B)) and [sic] the verdict rendered by the civil jury in the underlying trial.

V. The trial court in the nullity action committed reversible error in ruling that [Landry] failed to show facts which proved [Landry was] prejudiced by the *ex parte* conversation.

In its Answer to Appeal, PSA asserts error by the trial court in granting Landry's motion to strike the affidavit of the jury foreman, Ms. Dixon. Specifically, PSA contends the trial court so erred "because the affidavit does not reveal any statements made during deliberations or any juror's mental process[,] and because the content of the affidavit is admissible to show that there was no 'outside influence' brought to bear on the deliberations."

## LAW AND DISCUSSION

At the outset, we acknowledge PSA's contention that Landry does "not have the right to appeal" because "the denial of a motion for summary judgment is an interlocutory ruling from which no appeal may be taken[.]" However, we disagree.

3

> Generally, pursuant to La.Code Civ.P. art. 968, the denial of a motion for summary judgment is an interlocutory judgment from which an appeal may not be taken. However, when there is also an appeal from a final judgment, such as a trial court's grant of summary judgment, an appellate court may also review the interlocutory ruling. *See In re Succession of Carlton*, 11-288 (La.App. 3 Cir. 10/5/11), 77 So.3d 989, *writ denied*, 11-2840 (La. 3/2/12), 84 So.3d 532.

*Mackmer v. Estate of Angelle*, 14-665, p. 1 (La.App. 3 Cir. 12/10/14), 155 So.3d 125, 126 n.2, *writ denied*, 15-69 (La. 4/2/15), 176 So.3d 1031.

On appeal, Landry argues that "PSA made very significant admissions in their 'Statement of Uncontested Facts[,]' which was pleaded with the Motion for Summary Judgment." The purported admissions were: (1) that the ex parte communication "occurred after the jury had been sworn, after the presentation of evidence began, and prior to jury deliberations[;]" and, (2) that the trial court judge instructed the juror "not to reveal her involvement in the care of [the] minor child or her discussion with a co-worker regarding 'cortical thumb.'" We agree with Landry that these facts "**giv[e] rise** to [Landry's] right to assert the nullity action." (emphasis added). That was the issue before this court in *Landry*, 149 So.3d at 1019, wherein another panel of this court reasoned:

> Certainly, as recounted by the juror in the affidavit and repeated in the petition, the juror "expressed some discomfort with continuing to serve as a juror" to the trial judge because of the revelations regarding her potential involvement in the care of the child and that "she did not feel that it was appropriate[.]" While these statements are perhaps vague and not ultimately indicative that the juror had become unable or unqualified to serve due to bias, the statements are not insignificant. Thus, we find that they are sufficient to allege the existence of a cause of action on the issue of whether some improper procedure or practice deprived the plaintiffs of an opportunity to consider/challenge the juror's continued service.

While these undisputed facts were held to be sufficient for purposes of stating a cause of action, the issue now before this court is whether Landry is entitled to summary judgment. We, therefore, find no merit to this contention.

4

Therefore, in this appeal, we must decide whether the ex parte communication between the trial judge and the juror rises to the level of an "ill practice" to support a nullity action. La.Code Civ.P. art. 2004(A). For the reasons that follow, based upon our de novo review of the record,[2] we find that genuine issues of material fact remain which preclude the grant of summary judgment in favor of either party.

Relying in large part on the earlier opinion of this court, Landry argues that because an ex parte communication occurred, and because it was not revealed to the parties, these facts are sufficient to trigger La.Code Civ.P. art. 1769(B) and, ultimately, La.Code Civ.P. art. 2004. However, Landry is incorrect in stating that "**whenever there is *ex parte* contact between a judge and the jury which is not revealed to counsel, the verdict decided thereafter is void as a matter of law.**" We must, therefore, first consider the substance of the ex parte communication that occurred since, as PSA notes, it is not uncommon for there to be ex parte communication between a trial judge and a member of the jury, not all of which is impermissible. Generally, ex parte communication between a trial judge and a jury which is "administrative" or "managerial in nature" does not constitute reversible error, as opposed to ex parte communication "addressing legal issues." *Delo Reyes v. Liberty Mut. Fire Ins. Co.*, 08-769, p. 3 (La.App. 4 Cir. 2/18/09), 9 So.3d 890, 892, *writ denied*, 09-898 (La. 6/5/09), 9 So.3d 874.

---

[2]     When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the de novo standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Gray v. American Nat. Property & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (quoting *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638).

*Tolliver v. Broussard*, 14-738, pp. 5-6 (La.App. 3 Cir. 12/10/14), 155 So.3d 137, 141, *writ denied*, 15-212 (La. 4/17/15), 168 So.3d 401.

5

The undisputed facts in this case are that there was ex parte communication between Ms. Gisclaire and Judge Broussard and that the communication was not disclosed to the parties during the course of the trial. The extent and content of the communication was established by the affidavit of Ms. Gisclaire which states, in pertinent part:

3.

In my examination to become a juror, I revealed to the parties that I was presently a nurse at The Heart Hospital of Lafayette, but that formerly I had been a neonatal nurse working at Women's and Children's Hospital in Lafayette, Louisiana. I further revealed that I had worked certain cases with three of the defendants, Dr. Vasanth Nalam, Dr. Cong Vo[,] and Dr. Rosaire Belizaire. In my questioning, I indicated that despite the fact that I had worked with them, that I could be a fair and impartial juror[,] and I believed this to be so at the outset of the trial.

4.

After approximately one week of trial, I found that my employers at The Heart Hospital of Lafayette would not make financial arrangements for me to serve as a juror and that it was necessitating me working hours after jury duty, which was placing a physical and financial strain upon me. Another juror, Lyndsey Thibeaux, who was an alternate juror at that time, was also employed by The Heart Hospital of Lafayette and had similar problems. Ms. Thibeaux and myself asked to talk with Judge Ed Broussard who was presiding over the trial. We voiced our concerns to Judge Broussard, but he informed us that he was unable to control our employer's actions and that we would have to continue to serve. I also voiced at that time my concerns to Judge Broussard that I was feeling very uncomfortable with continuing to serve as a juror because much of the evidence was starting to involve friends and people I had worked with, such as Drs. Vo and Belizaire. He instructed us to continue serving as jurors and we did so.

5.

At some point later in the trial, I began to see the mention of a condition of "cortical thumb" in connection with the treatment of Tai Landry as an infant at Women's and Children's Hospital. I remembered having a discussion of this condition with the staff whose notes were being presented in evidence. Her name was Katherine

6

Comeaux, and I recalled having the same discussion while I was working with her at Women's and Children['s] Hospital.

6.

Later, on February 14, 2011, I recall that certain medical records were broadcast onto a screen for viewing by the jury[,] and I actually saw my name and my writing as a neonatal nurse in the treatment of Tai Landry. At the next break, I realized that I needed to speak to Judge Broussard and asked to do so. I spoke to Judge Broussard, who was also accompanied by his law clerk, Casey Blanchette. I told him that I had seen my notes and my name as a treating nurse on the case of Tai Landry. I did not feel it was appropriate since I had actually treated the child[,] and I recall discussing the condition of "cortical thumb" in connection with her treatment. Judge Broussard told me that "you are not to disclose this information to the other jurors[,] and I am not going to disclose this to the lawyers." He instructed me to continue to serve as a juror.

Ms. Gisclaire's affidavit attests that she relayed to the trial court judge: (1) that she was having physical and financial issues due to the trial; (2) that she was uncomfortable with her continued service as a juror because of her relationships with friends and co-workers; (3) that during the course of trial, she saw her name in the medical records and realized that she had been involved in the treatment of the minor child; and, (4) that she did not feel that her serving as a juror was appropriate. Undisputedly Ms. Gisclaire disclosed some significant concerns to the trial judge relative to her service as a juror. Moreover, although she may not have been cognizant of the conflict, given that she actually provided treatment to the minor child, Ms. Gisclaire was a potential witness in the trial in which she was serving as a juror.

We find that the content of the ex parte communication was not simply "administrative" or "managerial in nature[.]" *Delo Reyes*, 9 So.3d at 892. To the extent that the discussions raised legitimate questions on the suitability of Ms. Gisclaire to continue to serve as a juror, and her obvious concern about doing so,

7

this ex parte communication gave rise to legal issues which should have been disclosed to the parties when they became known to the trial court. At that point in the trial, the questionable propriety of Ms. Gisclaire remaining as a juror should have been made known to the attorneys, and the attorneys should have been given the opportunity to explore further the nature and extent of Ms. Gisclaire's fitness and ability to continue to serve as a fair and impartial juror in this trial. Given these facts, we readily find that the trial court proceeded improvidently and erred in instructing Ms. Gisclaire not to reveal her concerns to her fellow jurors and in failing to make a full disclosure to the attorneys of the information relayed to it. This occurrence constituted a procedural defect that occurred during the course of this trial.

Finding that a procedural defect resulted from the trial court's failure to disclose the pertinent ex parte communication with Ms. Gisclaire does not end our inquiry. The matter before us is an appeal of cross motions for summary judgment, not an appeal of the underlying jury verdict. In the instant case, Landry seeks to annul the judgment in the underlying action on the grounds that it was obtained by an ill practice. La.Code Civ.P. art. 2004(A). In *Wright v. Louisiana Power & Light*, 06-1181, pp. 12-13 (La. 3/9/07) 951 So.2d 1058, 1067 (footnote omitted), our supreme court has set forth the following relative to such a nullity action:

> In *Johnson v. Jones-Journet,* 320 So.2d 533 (La.1975), this Court reviewed the historical development of C.C.P. art. 2004 and noted that the jurisprudence under Art. 607 of the Code of Practice (the source of present C.C.P. art. 2004) established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Since that time, this Court has accepted those two requirements as the

necessary elements in establishing a nullity action under Art.2004. *See Gladstone v. American Auto. Ass'n, Inc.,* 419 So.2d 1219 (La.1982); *Kem Search[, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983)]; *Bell Pass Terminal, Inc. v. Jolin, Inc.,* 01-0149 (La.10/16/01), 800 So.2d 762.

However, those cases also further defined the types of conduct required to establish those two elements depending on the type of fraud or ill practice alleged. This Court has held that "the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." *Power Marketing[Direct, Inc. v. Foster*, 05-2023, p. 13 (La. 9/6/06), 938 So.2d 662, 671]; *Kem Search, supra* at 1070 (citing *Chauvin v. Nelkin Ins. Agency, Inc.,* 345 So.2d 132 (La.App. 1 Cir.), *writ denied,* 347 So.2d 256 (La.1977)); *see also, Schoen v. Burns,* 321 So.2d 908 (La.App. 1 Cir.1975); *St. Mary v. St. Mary,* 175 So.2d 893 (La.App. 3 Cir.1965); *Tapp v. Guaranty Finance Co.,* 158 So.2d 228 (La.App. 1 Cir.1963), *writ denied,* 245 La. 640, 160 So.2d 228 (1964).

Because the matter before us is an action in nullity, the critical inquiry is whether the procedural defect which occurred during the trial rises to the level of an ill practice and, thus, constitutes a nullity under the pertinent statute and the jurisprudence. Landry answers this inquiry in the affirmative and concludes that because an ill practice occurred, the underlying judgment is null under La.Code Civ.P. art. 2004. Of course, PSA reaches the contrary conclusion, and argues that it has not been shown that Ms. Gisclaire was unable or disqualified to serve as mandated by La.Code Civ.P. art. 1769(B).[3] There is obviously a question of material fact as to whether the procedural defect rises to the level of an ill practice.

The critical evidence before us relative to the ex parte communication is the affidavit of Ms. Gisclaire. Ms. Gisclaire's affidavit establishes that she was having

---

[3]Louisiana Code of Civil Procedure Article 1769(B) provides: "Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties."

"issues" with her service which was "placing a physical and financial strain" on her, that she was "uncomfortable" with her service as she learned the matter involved "friends and people that she worked with," and that she "did not feel that is was appropriate" that she serve as a juror. We also have proof from her affidavit and the medical records, that Ms. Gisclaire actually provided treatment to the minor child, and thus, was in fact a potential witness in this case. As we have concluded, this evidence is sufficient to establish that a procedural defect resulted from the trial court's failure to disclose the ex parte communication to the parties. However, we find that there remains a genuine issue of material fact as to whether this procedural defect that occurred during the underlying trial constitutes an ill practice under La.Code Civ.P. art. 1769(B), thereby establishing a nullity action under La.Code Civ.P. art. 2004(A).

Because we conclude that there remains a genuine issue of material fact as to whether the procedural defect which occurred during the course of this jury trial constitutes an ill practice which forms the basis of the nullity action, we must further conclude that neither party is entitled to judgment as a matter of law. We, therefore, affirm the trial court's denial of Landry's motion for summary judgment, and we reverse the trial court's grant of summary judgment in favor of PSA.

Finally, we acknowledge that PSA has filed an Answer to Appeal relative to the trial court's grant of Landry's motion to strike the affidavit of Ms. Dixon. However, given our finding that a genuine issue of material fact remains so as to preclude summary judgment in favor of either party, we pretermit a discussion of the trial court's grant of the motion to strike raised in PSA's Answer to Appeal.

10

## DECREE

For the reasons assigned, we affirm that portion of the trial court's judgment denying the motion for summary judgment on behalf of Plaintiffs, Camille Landry, individually and on behalf of her minor child, Tai Landry, and Ryan Landry, individually and on behalf of his minor child, Tai Landry, and we reverse that portion of the trial court's judgment granting summary judgment in favor of Pediatric Services of America, Inc. Costs of this appeal are assessed equally between the parties.

**AFFIRMED IN PART;**
**REVERSED IN PART.**

CAMILLE LANDRY ET AL.

VERSUS

PEDIATRIC SERVICES OF AMERICA, INC. ET AL.

**COOKS, J., concurring.**

I agree with the majority's finding that the content of Gisclaire's ex parte communication with the trial judge was not simply administrative or managerial in nature. The communication raised legitimate concerns regarding Gisclaire's suitability to continue to serve as a juror. For me, this fact alone merits annulment of the judgment. The attorneys should have been informed of Gisclaire's communication with the judge and they should have been afforded the opportunity to explore the nature and extent of Gisclaire's ability to be a fair and impartial juror in light of the issues she made known to the trial judge. Due process required no less. The majority finds the trial judge acted improvidently in instructing Gisclaire not to reveal her concerns to fellow jurors and to keep the information from the attorneys. I agree. Despite this finding the majority still believes an unresolved question of material fact exists regarding whether the trial judge's failure to inform Plaintiff of Gisclaire's communication constitutes an ill practice under the code of civil procedure. I believe this is a question of law. The only unresolved question as I see it is whether the ill practice here is unconscionable. Although I find it hard to imagine what additional facts may be obtained on remand of the case, which may aid in the resolution of this question, I am not opposed to allowing the trial court an opportunity to rule on the question taking into consideration our

1

observations herein. However, I do not believe we should pretermit a ruling on the trial judge's decision to strike the jury foreperson's affidavit. Louisiana Code of Evidence Article 606(B) expressly provides:

> Upon an inquiry into the validity of a verdict or indictment, **a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations** or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. **Nor may his affidavit** or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Clearly, the trial judge acted properly in striking the jury foreperson's affidavit. Further, juror Gisclaire can testify to no more than she has already stated in her affidavit. I can think of no further information the law permits juror Gisclaire to share that she has not already provided in her affidavit. The Code of Evidence prohibits the courts from inquiring into "any matter or statement occurring during the course of the jury's deliberations" and prohibits an inquiry by the court as "to the effect of anything upon [Gisclaire's] or any other juror's mind or emotions" which may have influenced Gisclaire or any other juror to either agree or disagree with the verdict.

This court has recently reaffirmed the steadfast rule embodied in our Code of Evidence and well established jurisprudence:

> Pursuant to La.Code Evid. art. 606(B), a juror cannot testify as to any matter or statement occurring during deliberations "or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes." This article also precludes juror statements and affidavits. *Id.* The one exception in civil cases is that the juror may testify as to "whether any outside influence was improperly brought to bear upon any juror." *Id.*

2

. . . .

In *Parker v. Centenary Heritage Manor Nursing Home,* 28,401 (La.App. 2 Cir. 6/26/96), 677 So.2d 568, *writ denied,* 96–1960 (La.11/1/96), 681 So.2d 1271, the jury answered *no* regarding the negligence of a defendant hospital in its treatment of the plaintiff. After trial, the plaintiff obtained juror affidavits to show that the jurors were confused over the meaning of the word *treatment.* The trial court struck the affidavits. The appellate court stated:

> The sanctity and privacy of jury deliberations is strongly safeguarded in Louisiana. Neither party is allowed to unlock the closed door of those deliberations, except in very limited circumstances. As the trial court correctly found, Louisiana law is well settled that the affidavits and testimony of jurors cannot be used to impeach their verdicts.

*Parker,* 677 So.2d at 574 (citing *Theriot v. Theriot,* 622 So.2d 257 (La.App. 1 Cir.1993), *writ denied,* 629 So.2d 1138 (La.1993)).

The *Parker* court found that failure to understand an interrogatory was not a matter about which the plaintiffs were able to offer any admissible supporting proof, and there was no outside improper influence which would allow the introduction of juror testimony. Similarly, depositions of three jurors, sought to impeach the verdict of the entire jury, were properly excluded in *Williams v. Super Trucks, Inc.,* 36,993 (La.App. 2 Cir 4/9/03), 842 So.2d 1210, *writ denied,* 03–1303 (La.9/5/03), 852 So.2d 1042.

*Dubois v. Armstrong*, 2015-345, p 8 (La.App. 3 Cir. 2/10/16), ___So.3d___, 2016 WL 516475 (Not released for publication) *See also, Glod v. Baker*, 08-355 (La.App. 3 Cir. 11/19/08), 998 So.2d 308 and *State v. Durr*, 343 So.2d 1004 (La. 1977).

The only thing Gisclaire may testify to is whether any outside influence was brought to bear. What does this mean in this case? There is no assertion here that the bailiff acted improperly or that any outside party threatened the juror. The only possible outside influence here was revealed by Gisclaire when she told the trial

judge that she had direct knowledge of the child's treatment, knew the hospital and the doctors being sued and had worked with them in this very case. What impact this relationship and knowledge had on Gisclaire's ultimate participation in jury deliberation and reaching a verdict is not discoverable because the Code of Evidence prevents inquiry into her thought processes.

We cannot get into the jury's mind, or even into Gisclaire's mind. I believe Gisclaire's affidavit, bolstered by the affidavit of the trial judge's law clerk, fully demonstrates that Gisclaire's continued service on the jury reasonably could have deprived the litigants of the right to a fair and impartial jury. Gisclaire was a potential witness in the matter. Additionally, she disclosed facts post-trial which creates doubt in any reasonable mind, including her own, that she could remain impartial particularly considering she worked closely with several of the Defendants on the very child who is the subject of this litigation. She expressed as clearly as she knew how to the trial judge that her impartiality was severely compromised and I do not think any further inquiry is necessary, or permitted once she entered the deliberations room.

In *Able v. Vulcan Materials Co.*, 2011-448, p. 9 (La.App. 1 Cir. 2/8/12), 94 So.3d 1, 13 (emphasis added), our sister circuit underscored the gravamen of the right to trial by a fair and impartial jury:

> Justice Marshall wrote that the great value of a trial by jury lies in its fairness and **impartiality.** *United States v. Burr,* 25 F.Cas. 49, 50 (Circuit Court D. Virginia 1807). A jury should enter upon the trial with minds open to those impressions which the testimony and the law of the case ought to make, **not with preconceived opinions which will resist those impressions**. *Id.* More recently, the United States Supreme Court has stated that among the basic fair trial rights that **can never be treated as harmless is the right to an impartial adjudicator, whether judge or jury**. *Gomez v. United States,* 490 U.S. 858, 876, 109 S.Ct. 2237, 2248, 104 L.Ed.2d 923 (1989). Indeed, the Louisiana Code of Civil Procedure recognizes the

4

importance of a jury's impartiality, permitting a juror to be challenged for cause, "[w]hen the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial." La. C.C.P. art. 1765. Safeguards of juror impartiality include *voir dire* and protective instructions from the trial judge. *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

The Louisiana Supreme Court has set forth two requirements in determining whether a judgment was obtained by fraud or ill practices:

> According to article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. Our jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. *Smith v. Cajun Insulation, Inc.* 392 So.2d 398 (La.1980). *Johnson v. Jones-Journet,* 320 So.2d 533 (La.1975). Furthermore, although our courts do not sanction negligence or laches, they have not hesitated to afford relief against such judgments regardless of any issue of inattention or neglect. C.C.P. art. 2004, Official Comment (b); *Alonso v. Bowers,* 222 La. 1093, 64 So.2d 443 (1953); *Succession of Gilmore,* 157 La. 130, 102 So. 94 (1924); *City of New Orleans v. LeBourgeois,* 50 La.Ann. 591, 23 So. 542 (1898); Comment, The Action of Nullity Under Louisiana Code of Civil Procedure Article 2004, 38 La.L.Rev. 806 (1978). Thus, the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. *Chauvin v. Nelkin Ins. Agency, Inc.* 345 So.2d 132 (La.App. 1st Cir.1977), writ denied, 347 So.2d 256 (La.1977); *Schoen v. Burns,* 321 So.2d 908 (La.App. 1st Cir.1975); *St. Mary v. St. Mary,* 175 So.2d 893 (La.App. 3d Cir.1965); *Tapp v. Guaranty Finance Co.,* 158 So.2d 228 (La.App. 1st Cir.1963), writ denied, 245 La. 640, 160 So.2d 228 (1964).

*Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070-71 (La.1983).

I believe the evidence before us leaves no doubt that the litigants in this trial were denied one of the most fundamental and basic constitutional bedrock rights of our judicial system, the right to a **fair and impartial** jury. Enforcement of any judgment obtained in derogation of so fundamental a right is unconscionable and

5

inequitable. The determination of whether juror Gisclaire could be a fair and impartial juror cannot be left to the outcome of the trial, i.e. the jury verdict, nor can it be left to Gisclaire's personal determination that she could be fair and impartial if she were to so testify under further questioning on remand, or to any "Monday morning" quarterbacking on our part. Gisclaire was legally an unqualified juror because she was a potential witness in the case. The facts Gisclaire presented to the trial judge, and now to this court, leave no doubt in my mind that the trial judge's failure to disclose the communication to Plaintiff cannot be deemed harmless error. I am in no way persuaded by any protestation of Defendants that Plaintiffs' counsel should have seen, from the volume of papers in evidence, Gisclaire's name during voir dire and he "possibly" made a choice not to complain about her presence on the jury. Even Gisclaire did not discern any connection to the matter before she noticed her own name on a trial exhibit flashed on screen to the jury during the trial. What matters is that upon realizing her direct involvement in the case she alerted the trial judge that her impartiality was in question. The trial judge's decision to keep her revelation secret from all the litigants afforded no opportunity to Plaintiff's counsel to explore this juror's fitness to serve. It is the denial of this opportunity that now makes it impossible for us to say with any real conviction that Plaintiff's right to a fair and impartial jury was not compromised.

The defense seemingly argues "no harm though fowl may have occurred here" because all of the jurors voted liability in favor of Plaintiff and as a consequence the judgment is not unconscionable, even in light of an alleged ill practice. But it is equally assertable here that the jurors' failure to assign any negligence to the local doctors and hospital may very well have been influenced by

6

the presence of juror Gislcaire and what undiscoverable events occurred during deliberation that may have motivated the jurors to not render a verdict against the local Defendants who were employer, friends and colleagues of juror Gisclaire. The danger that the latter could have occurred in this case is not imaginary. As the state supreme court has articulated:

> In *Johnson v. Jones-Journet,* 320 So.2d 533 (La.1975), this Court reviewed the historical development of C.C.P. art. 2004 and noted that the jurisprudence under Art. 607 of the Code of Practice (the source of present C.C.P. art. 2004) established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered **showed the deprivation of legal rights of the litigant seeking relief,** and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Since that time, this Court has accepted those two requirements as the necessary elements in establishing a nullity action under Art.2004. *See Gladstone v. American Auto. Ass'n, Inc.,* 419 So.2d 1219 (La.1982); *Kem Search, supra; Belle Pass Terminal, Inc. v. Jolin, Inc.,* 01-0149 (La.10/16/01), 800 So.2d 762.
>
> However, those cases also further defined the types of conduct required to establish those two elements depending on the type of fraud or ill practice alleged. This Court has held that "the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad **to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, *even innocently*, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable**." *Power Marketing, supra* at 671; *Kem Search, supra* at 1070 (citing *Chauvin v. Nelkin Ins. Agency, Inc.,* 345 So.2d 132 (La.App. 1 Cir.), *writ denied,* 347 So.2d 256 (La.1977)); *see also, Schoen v. Burns,* 321 So.2d 908 (La.App. 1 Cir.1975); *St. Mary v. St. Mary,* 175 So.2d 893 (La.App. 3 Cir.1965); *Tapp v. Guaranty Finance Co.,* 158 So.2d 228 (La.App. 1 Cir.1963), *writ denied,* 245 La. 640, 160 So.2d 228 (1964).
>
> The Court in *Kem Search* further defined the required "deprivation of legal rights" as **"[c]onduct which prevents an opposing party from having an opportunity to appear or to assert a defense."** *Id.*[9] **This definition was further expanded in *Belle Pass,* which held that "a right to a fair and impartial trial is a legal right entitled to all participants in a legal proceeding."** 800 So.2d at 767.

*Wright v. Louisiana Power & Light*, 2006-1181, pgs. 12-13 (La. 3/9/07); 951 So.2d 1058, 1067 (emphasis added).

Plaintiff was denied the opportunity to question juror Gisclaire and to challenge her fitness to serve as a juror. I simply cannot conclude from the facts known in the record at this stage that this denial was not inequitable or harmless.